John W. Leardi
Nicole P. Allocca
BUTTACI LEARDI & WERNER LLC
212 Carnegie Center, Suite 202
Princeton, New Jersey 08540
609-799-5150

Leslie Howard
COHEN HOWARD, LLP
766 Shrewsbury Ave., Suite 200
Tinton Falls, NJ 07724
732-747-5202

*Attorneys for Plaintiff*
*Atlantic Neurosurgical Specialists, P.A.*

### IN THE UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ATLANTIC NEUROSURGICAL SPECIALISTS, P.A., | Civil Action No.: 20-cv-10685 |
| *Plaintiff,* | |
| - v. - | **COMPLAINT** |
| MULTIPLAN, INC., CONNECTICUT GENERAL LIFE INSURANCE COMPANY, and UNITEDHEALTHCARE INSURANCE COMPANY, | |
| *Defendants.* | |

Plaintiff Atlantic Neurosurgical Specialists, P.A ("Atlantic Neuro"), through its undersigned counsel and by way of Complaint against Defendants MultiPlan, Inc. ("MultiPlan"), Connecticut General Life Insurance Company ("Cigna"), UnitedHealthcare Insurance Company ("United"), and ABC Corps. 1-100, hereby alleges as follows:

### <u>INTRODUCTION</u>

1.      In 2011, MultiPlan solicited and induced Atlantic Neuro to join its participating

provider network and to agree to accept payment, based on a percentage of Atlantic Neuro's billed charges ("Contract Rates") for surgical and other related medical services rendered to Atlantic Neuro's patients enrolled in "Benefit Programs" offered by MultiPlan's "Clients" and "Users," including, *inter alia*, Cigna and United.

2.      Under the MultiPlan Participating Professional Group Agreement (the "Agreement"), MultiPlan represented to Atlantic Neuro that its Clients and Users would pay Contract Rates to Atlantic Neuro for surgical and other related medical services rendered to Atlantic Neuro's patients enrolled in Benefit Programs underwritten and/or administered by Cigna and United when any such patient accesses the Multiplan network.

3.      Paragraph 1.14 of the Agreement states that the Multiplan network logo is identified on a patient's insurance card.

4.      Atlantic Neuro is a Participating Professional as defined under Paragraph 1.13 of the Agreement, which states Atlantic Neuro is bound to provide services pursuant to the Agreement when presented with a patient participating in the Multiplan network. Paragraph 3.4 compels a Participating Professional to use all reasonable efforts to accept all Participants for treatment.

5.      Under Paragraph 1.6 of the Agreement, as modified by an Amendment executed by and among Atlantic Neuro and MultiPlan on or about January 15, 2015, Atlantic Neuro's Contract Rates under the Agreement are defined as 70% of its billed charges.

6.      Under Paragraph 4.3 of the Agreement, MultiPlan warranted that "it has entered into agreements with Clients that specify that the right to access the Network, including access to the Contract Rates, shall be subject to the terms of this Agreement".

7.      Under Paragraph 4.7 of the Agreement, MultiPlan warranted that it "will require

Clients and its Users to use the Contract Rates agreed to in this Agreement solely for Covered Services rendered to Participants covered under a Program which utilizes the Network".

8. Under Paragraph 5.4 of the Agreement, Participating Professionals cannot balance bill the patient beyond the patient's Deductible and/or Co-insurance in exchange for payment of the Contract Rates.

9. All Defendants knew, or should have known, that Atlantic Neuro relied on the express written representations made by MultiPlan that Atlantic Neuro would be paid its Contract Rates for services rendered to any patient presenting an insurance card containing the MultiPlan logo.

10. Despite this, when Atlantic Neuro billed Cigna for services rendered to H.I., a patient enrolled in a Benefit Program administered by Cigna, and whose insurance card contained the MultiPlan logo, Cigna paid Atlantic Neuro far less than its Contract Rates.

11. Similarly, when Atlantic Neuro billed United for services rendered to M.D. and C.F., two patients enrolled in a Benefit Programs administered by United, and whose insurance card contained the MultiPlan logo, United paid Atlantic Neuro far less than its Contract Rates.

12. This action is brought solely to ensure that Atlantic Neuro is compensated by the Defendants pursuant to the Contract Rates established by the Agreement with respect to professional services rendered to its patients H.I., M.D., and C.F. The amount due to Atlantic Neuro collectively from the Defendants is not less than $431,208.69.

## PARTIES

A. **Plaintiff Atlantic Neuro.**

13. Founded in 1958, Atlantic Neuro is the largest neurosurgical practice in New Jersey and one of the most advanced in the country. It offers the full spectrum of surgical treatment and management of patients with neurosurgical problems through a complement of sub-specialized,

board certified, and board eligible neurosurgeons that make it one of the premier neurosurgery practice for surgical procedures involving the brain, spine/peripheral nervous, and neurovascular systems in New Jersey. Atlantic Neuro maintains offices throughout New Jersey, including an office located at 3700 Route 33, Suite B, Neptune, New Jersey 07753.

14.     Atlantic Neuro's brain specialists have expertise in treating a variety of conditions and have organized clinical programs in skull base surgery, stereotactic radiosurgery, neuro-oncology, and endoscopic pituitary surgery. Its patients benefit from highly specialized care, bringing together experts in neurosurgery, otolaryngology, radiation oncology, medical oncology, neuroradiology, neuro-ophthalmology, neurology, neuropathology, physiatry, and social work. Brain conditions treated by Atlantic Neuro include malignant and low-grade gliomas, metastatic brain tumors, lymphomas, meningiomas, pituitary adenomas, acoustic neuromas/schwannomas, colloid cysts, and pineal tumors.

15.     Atlantic Neuro's multidisciplinary team of board-certified, fellowship-trained spine specialists treat the full spectrum of spinal disorders, from compression fractures and degenerative disc disease, to herniated discs, osteoarthritis, osteoporosis, rheumatoid arthritis, stenosis, sciatica, scoliosis, spinal tumors and more. Its neurosurgeons offer unparalleled expertise in an array of sophisticated spinal procedures for the treatment of disk problems, stenosis, tumors, fractures, deformity, and instability, utilizing the very latest techniques and equipment available, including spinal navigation, disc replacement, minimally invasive decompression, fusion procedures, and Cyberknife for the treatment of spinal tumors.

16.     Atlantic Neuro also serves as a primary referral center providing stroke and neurovascular treatments. Its neurovascular specialists consist of neurosurgeons, radiologists, stroke neurologists, neuro-intensivists, and stroke rehabilitation experts, which treat patients

suffering from ischemic, hemorrhagic, and other vascular conditions with a combination of endovascular surgery and open neurosurgical procedures.

**B.      Defendant MultiPlan.**

17.      MultiPlan is a New York corporation with its principal place of business at 115 Fifth Avenue, New York, NY 10003. Multiplan, among other things, develops and operates healthcare provider networks.

18.      MultiPlan contracts with over a 1.2 million healthcare providers, who in turn are provided access to patients enrolled in Benefit Programs offered by MultiPlan's Clients, who include insurance companies, and Users, who include both self-funded benefits plans and individuals who enroll in a MultiPlan discount card program.

19.      Multiplan is licensed by the New Jersey Department of Banking and Insurance ("NJ-DOBI") as an organized delivery system and conducts business in the state accordingly.

**C.      Defendant Cigna.**

20.      Cigna is an operating subsidiary of Cigna Corporation with a principal place of business of Two Chestnut Place, 1601 Chestnut Street, Philadelphia, PA 19192.

21.      Cigna offers, underwrites, and administers Benefit Programs through which healthcare expenses incurred by program insureds for services and/or products covered by the Benefit Programs are reimbursed by and/or through Cigna.

22.      Cigna is licensed by the NJ-DOBI to do business in New Jersey and conducts business in the state accordingly.

23.      Cigna is a Client and/or User of MultiPlan as defined in the Agreement.

**D.      Defendant United.**

24.      United is a wholly-owned and controlled subsidiary of Unimerica, Inc., which is

wholly-owned and controlled by United HealthCare Services, Inc., with a principal place of business located at 9900 Bren Road East, Minnetonka, Minnesota 55343.

25.     United offers, underwrites, and administers Benefit Programs through which healthcare expenses incurred by program insureds for services and/or products covered by the Benefit Programs are reimbursed by and/or through United.

26.     United is licensed by NJ-DOBI to do business in New Jersey and conducts business in the state accordingly.

27.     United is a Client and/or User of MultiPlan as defined in the Agreement

### JURISDICTION AND VENUE

28.     This Court has subject matter jurisdiction over Atlantic Neuro's claims under 28 U.S.C. § 1332 (diversity jurisdiction) because the amount in controversy exceeds the sum or value of $75,000, exclusive of interests and costs, and is brought by a citizen of New Jersey (Atlantic Neuro) against citizens of New York (MultiPlan), Pennsylvania (Cigna), and Minnesota (United).

29.     Venue is appropriate in this District because the Paragraph 9.3 of the Agreement states that "[v]enue of any dispute litigated between the parties shall be in Federal court in the state and county of residence of the defendant." MultiPlan is a resident of this District.

30.     This Court has personal jurisdiction over the remaining Defendants because both Cigna and United have substantial contacts with, and regularly conduct business in this District.

31.     This Court's construction of the Agreement, and the parties respective obligations thereunder, shall be governed by New Jersey law, as Paragraph 9.3 of the Agreement indicates it is to be constructed under Federal laws and regulations, as well as the laws of the state in which health care services are rendered hereunder. All surgical and other medical services provided by Atlantic Neuro relative to its claims here were provided in New Jersey.

## DEFENDANTS' UNDERPAYMENT OF CLAIMS

**A.     Atlantic Neuro's Claims and Appeals on Behalf of its Patient H.I.**

32.     H.I., age 40, is insured through a Benefit Program administered by Cigna on behalf of CBRE Group. The insurance card(s) issued to H.I. by Cigna includes the MultiPlan logo, indicating that H.I.'s Benefit Program participates with MultiPlan.

33.     H.I. underwent three surgical procedures performed by surgeons affiliated with Atlantic Neuro that were later billed to Cigna and paid at rates far below the Contract Rate set forth in the Agreement. In all, Atlantic Neuro submitted claims totaling $458,264.14 to Cigna for services rendered to H.I., and was paid $8,064.52, less than 2% of its billed charges.

*11/9/2017 Date of Service*

34.     On November 9, 2017, H.I. presented to Morristown Memorial Hospital's Emergency Department with complaints of severe leg pain and acute and progressive leg weakness. At the time, Jay Young Chun, MD, PhD, Vice President of Atlantic Neuro and Director of Neurotrauma at Morristown Memorial Medical Center, was the specialist on-call.

35.     Upon examining H.I., Dr. Chun diagnosed her with focal L3-4 stenosis with neural compression, L4-5 large herniated disk with neural compression with significant neurologic deficit and severe acute and progressive pain. H.I. was emergently taken to the operating room and Dr. Chun performed L3-4 laminectomy, foraminotomy, partial facetectomy using microscope, use of intraoperative fluoroscopy and an L4-5 laminectomy, foraminotomy, partial facetectomy, discectomy using microscope, use of intraoperative fluoroscopy.

36.     For these services, Atlantic Neuro submitted charges to Cigna in the amount of $39,020.00. Cigna deemed the services "Covered Services" as defined by the Agreement, but nevertheless only paid Atlantic Neuro $1,493.32, less than 4% of its billed charges.

37.     Pursuant to Paragraph 5.3 of the Agreement, Atlantic Neuro submitted a challenge

to Cigna directly related to its underpayment of the 11/9/17 date of service in February 2018, less than a month after receiving the underpayment from Cigna. It submitted additional challenges in June 2018, November 2018, and November 2019, to no avail. Cigna's sole explanation for its level of payment was that it was subject to a "pricing review performed by an outside vendor." Upon information and belief, that outside pricing vendor was MultiPlan and/or one of its affiliates. The only basis for Multiplan to 'price' the claim would be at the Contract Rate.

### 1/25/2019 Date of Service

38.     On January 25, 2019, H.I. again presented to Morristown Memorial Hospital's emergency department with complaints of severe leg pain as well as deficit. Imaging determined a herniated lumbar disk. H.I. was immediately taken to the operating room and underwent anterior lumbar interbody fusion, use of morselized autograft, use of infuse, anterior antibody instrumentation, use of a polyetheretherketone antibody device, and use of intraoperative fluoroscopy performed by Dr. Chun. The procedure was performed with Amit V. Patel, with Dr. Chun and Dr. Patel operating as "co-surgeons."

39.     For these services, Atlantic Neuro submitted charges to Cigna in the amount of $137,773.46. Cigna deemed the services "Covered Services" as defined by the Agreement by, upon information and belief, paying both Morristown Hospital and Dr. Patel for their services as part of the overall intervention. Cigna, nevertheless, paid Atlantic Neuro nothing.

40.     Pursuant to Paragraph 5.3 of the Agreement, Atlantic Neuro submitted a challenge to Cigna directly related to its underpayment of the 1/25/19 date of service in July 2019, less than five months after receiving the underpayment and corresponding explanation from Cigna. It submitted an additional challenge in February 2020, to no avail.

*3/6/2019 Date of Service*

41.     On March 6, 2019, H.I. presented to Overlook Medical Center with a diagnosis of severe cord compression with progressive deficit. H.I. was immediately taken to the operating room and underwent an anterior cervical diskectomy and fusion, anterior cervical diskectomy, foraminotomy, partial facetectomy, an anterior interbodu fusion, use of a polyetheretherketone interbody device, use of an anterior cervical instrument, use of morselized autograft and alloraft, use of microscope, and use of intraoperative fluoroscopy performed by Dr. Chun.

42.     For these services, Atlantic Neuro submitted charges to Cigna in the amount of $181,470.68. Cigna deemed the services "Covered Services" as defined by the Agreement, but nevertheless only paid Atlantic Neuro $6,571.20, less than 4% of its billed charges.

43.     Pursuant to Paragraph 5.3 of the Agreement, Atlantic Neuro submitted a challenge to Cigna directly related to its underpayment of the 1/25/19 date of service in July 2019, less than three months after receiving the underpayment and corresponding explanation from Cigna. It submitted an additional challenge in September 2020, to no avail. During the pendency of Atlantic Neuro's challenges, a third-party pricing negotiator contacted Atlantic Neuro on behalf of Cigna on multiple occasions, offering each time to settle the dispute for less than $15,000, or less than 9% of Atlantic Neuro's billed charges.

**B.     Atlantic Neuro's Claims and Appeals on Behalf of its Patient M.D.**

44.     M.D., age 56, is insured through a Benefit Program administered by United on behalf of Control4. The insurance card(s) issued to M.D. by United includes the MultiPlan logo, indicating that M.D.'s Benefit Program participates with MultiPlan.

45.     M.D. underwent a surgical procedure performed by surgeons affiliated with Atlantic Neuro that were later billed to United and paid at rates far below the Contract Rate set

forth in the Agreement. In all, Atlantic Neuro submitted claims totaling $49,803,.02 to United for services rendered to M.D., and was paid $481.98, less than 2% of its billed charges.

46.     On July 9, 2018, Mr. Dailey presented to Morristown Medical Center with a diagnosis of left-sided herniated disk fragment at L3-4. M.D. was immediately taken to the operating room and underwent an anterior a left lumbar microdiscectomy and foraminotomy performed by Kyle T. Chapple, M.D., and assisted by Cris Amato of Atlantic Neuro.

47.     For these services, Atlantic Neuro submitted charges to United in the amount of $49,803.12. United deemed the services "Covered Services" as defined by the Agreement, but nevertheless only paid Atlantic Neuro $481.98, with $786.16 applied to M.D.'s deductible. So, in all, United process these claims to pay at less than 3% of Atlantic Neuro's billed charges.

48.     Pursuant to Paragraph 5.3 of the Agreement, Atlantic Neuro submitted a challenge to United directly related to its underpayment of the 7/9/18 date of service in September 2018, less than a month after receiving the underpayment and corresponding explanation from United. It submitted additional challenge in February 2019, April 2019, and February 2020, to no avail.

**C.     Atlantic Neuro's Claims and Appeals on Behalf of its Patient C.F.**

49.     C.F., age 36, is insured through a Benefit Program administered by United on behalf of New York University. The insurance card(s) issued to C.F. by United includes the MultiPlan logo, indicating that C.F.'s Benefit Program participates with MultiPlan.

50.     C.F. underwent three surgical procedures performed by surgeons affiliated with Atlantic Neuro that were later billed to United and paid at rates far below the Contract Rate set forth in the Agreement. In all, Atlantic Neuro submitted claims totaling $125,881.60 to Cigna for services rendered to C.F., and was paid $4,008.94, less than 4% of its billed charges.

*12/17/2018 Date of Service*

51.     On December 17, 2018, C.F. presented to Overlook Medical Center with a diagnosis of metastatic neoplasm to the right cerebellum. C.F. was taken to the operating room and underwent CyberKnife stereotactic radiosurgical treatment of a metastatic neoplasm to the right cerebellum by Yaron Moshel, M.D., of Atlantic Neuro.

52.     For these services, Atlantic Neuro submitted charges to United in the amount of $41,600. United deemed the services "Covered Services" as defined by the Agreement by, upon information and belief, paying Overlook Medical Center for its services as part of the overall intervention. United, nevertheless, paid Atlantic Neuro nothing.

53.     Pursuant to Paragraph 5.3 of the Agreement, Atlantic Neuro submitted a challenge to United directly related to its underpayment of the 12/17/18 date of service in February 2019, less a month after receiving the underpayment and corresponding explanation from United. It submitted additional challenges in August 2019 and October 2019, to no avail.

*12/21/2018 Date of Service*

54.     On December 21, 2018, C.F. underwent a second staged procedure to treat a metastatic lesion to the right pre-ventricular area, again by Dr. Moshel of Atlantis Neuro.

55.     For these services, Atlantic Neuro submitted charges to United in the amount of $41,600. United deemed the services "Covered Services" as defined by the Agreement by, upon information and belief, paying Overlook Medical Center for its services as part of the overall intervention. United, nevertheless, paid Atlantic Neuro nothing.

56.     Pursuant to Paragraph 5.3 of the Agreement, Atlantic Neuro submitted a challenge to United directly related to its underpayment of the 12/21/18 date of service in February 2019, less than a month after receiving the underpayment and corresponding explanation from United.

11

It submitted additional challenges in August 2019 and October 2019, to no avail.

*2/22/2019 Date of Service*

57.     On February 22, 2019, presented to Overlook Medical Center with a diagnosis of metastatic neoplasm to the right occipital lobe. C.F. was taken to the operating room and underwent CyberKnife stereotactic radiosurgical treatment of a metastatic neoplasm to the right occipital lobe by Dr. Moshel, of Atlantic Neuro.

58.     For these services, Atlantic Neuro submitted charges to United in the amount of $42,681.60. United deemed the services "Covered Services" as defined by the Agreement but nevertheless only paid Atlantic Neuro $4,008.94, or less than 10% if its billed charges.

59.     Pursuant to Paragraph 5.3 of the Agreement, Atlantic Neuro submitted a challenge to United directly related to its underpayment of the 2/22/19 date of service in March 2019, less a month after receiving the underpayment and corresponding explanation from United. It submitted additional two challenges in August 2019, to no avail

## COUNT I
## BREACH OF CONTRACT
### (Against MultiPlan Only)

60.     The foregoing allegations are re-alleged and incorporated by reference as if fully set forth herein.

61.     In November 2011, Atlantic Neuro and MultiPlan entered into the Agreement.

62.     MultiPlan promised to require its Clients and Users, including Cigna and United, to reimburse Atlantic Neuro its "Contract Rates" for surgical and related medical services rendered by Atlantic Neuro's medical staff to patients whose Benefit Programs elected to participate in the MultiPlan program, as identified by the MultiPlan logo on the patients' insurance cards.

63.     Based on the January 2015 amendment to the Agreement, Atlantic Neuro's Contract Rates under the Agreement are 70% of Atlantic Neuro's billed charges.

64.     When Atlantic Neuro billed Cigna for services rendered to H.I., a patient enrolled in a Benefit Program administered by Cigna, and whose insurance card contained the MultiPlan logo, Cigna paid Atlantic Neuro far less than its Contract Rates.

65.     When Atlantic Neuro billed United for services rendered to M.D. and C.F., two patients enrolled in Benefit Programs administered by United, and whose insurance card contained the MultiPlan logo, United paid Atlantic Neuro far less than its Contract Rates.

66.     MultiPlan breached its contract with Atlantic Neuro by failing to ensure its Clients Cigna and United reimbursed Atlantic Neuro for services rendered to H.I. in the case of Cigna, and M.D. and C.F., in the case of United, at the Contract Rates.

67.     As a direct and proximate result of MultiPlan's breach of its Agreement contract with Atlantic Neuro, Atlantic Neuro has sustained damages not less than $431,208.69.

### COUNT II
### BREACH OF CONTRACT
### (Against Cigna Only)

68.     The foregoing allegations are re-alleged and incorporated by reference as if fully set forth herein.

69.     Cigna placed the MultiPlan logo on H.I.'s insurance card to indicate that the Benefit Program through which H.I. has health benefits participated in MultiPlan's network.

70.     Cigna's representation that H.I.'s Benefit Program participated in MultiPlan's network created and implied-in-fact contract with Atlantic Neuro that it would be paid pursuant to the Contract Rates set forth in the Agreement.

71.     By substantially underpaying Atlantic Neuro for the professional services provided to H.I., Cigna has breached that implied-in-fact contact.

72.     As a direct and proximate result of Cigna's breach of its implied-in-fact contract with Atlantic Neuro, Atlantic Neuro has sustained damages not less than $312,720.38.

## COUNT III
## BREACH OF CONTRACT
### (Against United Only)

73.     The foregoing allegations are re-alleged and incorporated by reference as if fully set forth herein.

74.     United placed the MultiPlan logo on M.D.'s and C.F.'s insurance cards to indicate that the Benefit Programs through which M.D. and C.F. have health benefits participated in MultiPlan's network.

75.     United's representation that M.D.'s and C.F.'s Benefit Programs participated in MultiPlan's network created and implied-in-fact contract with Atlantic Neuro that it would be paid pursuant to the Contract Rates set forth in the Agreement.

76.     By substantially underpaying Atlantic Neuro for the professional services provided to M.D. and C.F., United has breached that implied-in-fact contact.

77.     As a direct and proximate result of United's breach of its implied-in-fact contract with Atlantic Neuro, Atlantic Neuro has sustained damages not less than $118,488.31.

## COUNT IV
## BREACH OF IMPLIED WARRANTY
## OF GOOD FAITH AND FAIR DEALING
### (Against all Defendants)

78.     The foregoing allegations are re-alleged and incorporated by reference as if fully set forth herein.

79.     New Jersey law implies in every contractual relationship an implied warranty of good and fair dealing whereby parties are obligated to act in a manner that is consistent with the reasonable expectations of the other party to the contract.

80.     Defendants violated the implied warranty of good faith and fair dealing with respect to their contracts with Atlantic Neuro through acts of commission and omission that were wrongful

and without justification.

81.     As a direct and proximate result of Defendants breaches, Atlantic Neuro has sustained damages not less than $431,208.69.

## COUNT V
## PROMISSORY ESTOPPEL
### (Against all Defendants)

82.     The foregoing allegations are re-alleged and incorporated by reference as if fully set forth herein.

83.     Defendant's representations that Cigna and United would honor the Contract Rates in the Agreement for services rendered to H.I. in the case of Cigna, and M.D. and C.F., in the case of United, represented promised to Atlantic Neuro.

84.     Defendants knew or should have known that Atlantic Neuro would rely upon Defendants promised to honor the Contract Rates in the Agreement.

85.     Atlantic Neuro substantially relied upon the promises made by the Defendants that they would honor the Contract Rates in the Agreement.

86.     Injustice can only be avoided by legally-enforcing Defendants promises to honor the Contract Rates in the Agreement.

## COUNT VI
## QUANTUM MERUIT
### (Against all Defendants)

87.     The foregoing allegations are re-alleged and incorporated by reference as if fully set forth herein.

88.     Atlantic Neuro furnished valuable services in the form of surgical and related medical interventions to H.I., M.D., and C.F.

89.     The valuable services provided to H.I., M.D., and C.F. were provided to and accepted H.I., M.D., and C.F. under such circumstances that Defendants were reasonably notified

that Atlantic Neuro in providing the services in question expected to be paid its Contract Rates under the Agreement.

**WHEREFORE**, Plaintiffs demand judgment on all the foregoing counts in their favor against Defendants as follows:

A.     Awarding Atlantic Neuro compensatory damages not less than $431,208.69;

B.     Awarding Atlantic Neuro pre-judgment interest under the New Jersey prompt payment law and the regulations promulgated thereunder;

C.     Awarding Atlantic Neuro punitive damages for Defendants' malicious and oppressive conduct that reflected a conscious disregard of Atlantic Neuro's rights.

D.     Awarding Atlantic Neuro disbursements and expenses of this action, including reasonable attorneys' fees, in amounts to be determined by the Court; and

E.     Granting such other and further relief as is just and proper considering the evidence.

## <u>JURY DEMAND</u>

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Atlantic Neuro hereby demands a trial by jury of any issue trial of right by a jury.


Dated: December 18, 2020                      Respectfully submitted,

                                            /s/ John W. Leardi
                                            John W. Leardi
                                            Nicole P. Allocca
                                            BUTTACI LEARDI & WERNER LLC
                                            212 Carnegie Center, Suite 202
                                            Princeton, New Jersey 08540
                                            609-799-5150

                                            Leslie Howard
                                            COHEN HOWARD, LLP
                                            766 Shrewsbury Ave., Suite 200
                                            Tinton Falls, NJ 07724
                                            732-747-5202

                                            *Attorneys for Plaintiff*
                                            *Atlantic Neurosurgical Specialists, P.A.*