ORIGINAL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - -X
ATLANTIC NEUROSURGICAL
SPECIALISTS, P.A.,

               Plaintiff,           20 Civ. 10685 (LLS)

       - against -           OPINION & ORDER

MULTIPLAN, INC., CONNECTICUT
GENERAL LIFE INSURANCE COMPANY,
UNITED HEALTHCARE GROUP COMPANY,

               Defendants.

- - - - - - - - - - - - - - - - - -X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 1/18/22

    Atlantic Neurosurgical Specialists, P.A. ("Atlantic Neuro") seeks to recover the cost of medical services it provided to three patients insured by employee health benefit plans that were underwritten by either Cigna Health and Life Insurance Company ("Cigna") or UnitedHealthcare Insurance Company ("United"). Atlantic Neuro asserts various contractual and quasi-contractual claims against the plan providers, Cigna and United, and the administering preferred provider organization ("PPO"), Multiplan, Inc. ("Multiplan"), for the underpayment of its services.

    Defendants move to dismiss all counts for failure to state a claim. While they moved separately, their motions will be considered together.

- 1 -

Defendants' motions are granted in part and denied in part. All claims against Cigna and United are dismissed, and so are Counts Four and Six against Multiplan. Two Counts against Multiplan remain: Count One alleging breach of contract and Count Five alleging promissory estoppel.

I.   Factual Background

The following facts are taken from Atlantic Neuro's Complaint and are presumed to be true for the purpose of this ruling.

Atlantic Neuro is a neurosurgical healthcare provider in New Jersey. Compl. ¶ 13. Cigna and United administer employee benefit health plans, Benefit Programs, by processing and reimbursing "healthcare expenses incurred by program insureds for services and/or products covered by the Benefit Programs." Id. ¶¶ 21, 25.

Multiplan is a developer and administrator of a Preferred Provider Organization ("PPO") Network. Id. ¶ 18.  As such, Multiplan contracts with healthcare providers to be "participating providers" in its PPO Network. Id. ¶ 2. Participating providers agree to render covered medical services at a discounted rate (the Contract Rate). Id.

Multiplan then sells the right to access the PPO Network to clients, including insurance companies. Id. Consequently, in addition to the networks clients maintain for themselves,

- 2 -

clients, acting on behalf of their Benefit Programs, can access the Multiplan PPO Network and tap into the reduced rates. Id. Cigna and United are clients of Multiplan. Id. ¶¶ 23, 27. Atlantic Neuro has not entered into an express contract with Cigna or United.

On November 1, 2011, Atlantic Neuro contracted with Multiplan to be a participating provider. Id. ¶ 1. Atlantic Neuro alleges that under the contract, the Multiplan Participating Professional Group Agreement ("Agreement"), Multiplan represented that its clients "would pay Contract Rates to Atlantic Neuro for surgical and other related medical services rendered to Atlantic Neuro's patients enrolled in Benefit Programs underwritten and/ or administered by Cigna or United when any such patient accesses the Multiplan network." Id. ¶ 2.

Thus, Atlantic Neuro alleges that the Agreement entitles it to be paid at the Contract Rate, 70% of its billed charges, when it provides covered services to patients "presenting" a Cigna or United "insurance card containing the Multiplan logo." Id. ¶¶ 5, 9. In exchange, Atlantic Neuro is bound to provide services "when presented with a patient participating in the Multiplan Network," without "balance billing" the patient for the difference between the Contract Rates and its usual fees. Id. ¶¶ 4, 8.

- 3 -

Atlantic Neuro claims that Cigna and United failed to pay the Contract Rate for services rendered by Atlantic Neuro to three of their insureds. Id. ¶¶ 10-11. Atlantic Neuro alleges that all of the patients' insurance cards, issued by either United or Cigna, included the Multiplan Logo and that all the services it rendered qualify as "covered services" under the Agreement. Id. ¶¶ 32, 36, 39, 42, 44, 47, 49, 52, 55, 58.

First, Atlantic Neuro performed three surgical procedures on H.I., who was insured through a Benefit Program administered by Cigna on behalf of CBRE. Id. ¶ 32. For the procedure rendered on November 9, 2017, Atlantic Neuro alleges Cigna only paid it $1,493.32 even though it submitted charges to Cigna in the amount of $39,020.00. Id. ¶ 36. For services rendered on January 25, 2019, Atlantic Neuro alleges Cigna paid nothing towards submitted charges of $137,773.46. Id. ¶ 39. For services rendered on March 6, 2019, Atlantic Neuro alleges Cigna only paid $6,571.20 although Atlantic Neuro submitted charges in the amount of $181, 470.68. Id. ¶ 42.

Second, Atlantic Neuro rendered services to M.D., a patient insured by United on behalf of Control4. Id. ¶ 44. Atlantic Neuro submitted claims totaling $49,803.02 for the rendered services but United paid only $481.98. Id. ¶ 47.

Third, Atlantic Neuro thrice provided medical care to C.F., who was insured by New York University's Benefit Program, under

the administration of United. Id. ¶ 49. United underpaid on all of those claims, paying nothing towards December 17, 2018 services totaling $41,600, paying nothing towards December 21, 2018 services totaling $41,600, and paying $4,008.94 towards February 22, 2019 services totaling $42,681.60. Id. ¶¶ 52, 55, 58.

In total, Atlantic Neuro alleges that it was underpaid $431, 208.69. Id. ¶ 12. On December 18, 2020, Atlantic Neuro brought suit to recover the amount owed alleging: (1) Breach of Contract against Multiplan; (2) Breach of Contract against Cigna; (3) Breach of Contract against United; (4) Breach of Implied Warranty of Good Faith and Fair Dealing against all Defendants; (5) Promissory Estoppel against all Defendants; (6) Quantum Meruit against all Defendants. Id. ¶¶ 60- 89.

On March 29, 2021, Defendants each moved to dismiss for failure to state a claim upon which relief can be granted. Additionally, Cigna and United both allege that Atlantic Neuro's state law claims are preempted by ERISA.

We examine each argument in turn.

## II.  Procedural Framework

A court may grant a motion to dismiss if the complaint fails to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6). To withstand such a motion to dismiss, a plaintiff is obligated to plead "enough facts to state a claim

- 5 -

to relief that is plausible on its face." Ruotolo v. City of New York, 514 F.3d 184, 188 (2d Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). To do so requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action[.]" Twombly, 550 U.S. at 570 (citations omitted).

In reviewing a motion for dismissal pursuant to Rule 12(b)(6), a court reviews the complaint "liberally, accepting all factual allegations as true, and drawing all reasonable inferences in the plaintiff's favor." Nicosia v. Amazon.com, Inc., 834 F.3d 220, 230 (2d Cir. 2016). The principle that a court must accept all allegations as true, however, does not apply to legal conclusions. Iqbal, 556 U.S. at 678.

The complaint, for purposes of a motion to dismiss, includes written exhibits attached to it and "any statements or documents incorporated in it by reference." Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002). "Where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document

'integral' to the complaint." DiFolco v. MSNBC Cable L.L.C., 622
F.3d 104, 111 (2d Cir. 2010) (quoting Mangiafico v. Blumenthal,
471 F.3d 391, 398 (2d Cir. 2006)).

Facts and allegations raised for the first time in motion
papers cannot be used to supplement the complaint and decide the
motion to dismiss. See, e.g., Guo v. IBM 401(k) Plus Plan, 95 F.
Supp. 3d 512, 526-27 (S.D.N.Y. 2015); Universal Trading & Inv.
Co. v. Tymoshenko, No. 11 CIV. 7877, 2012 WL 6186471, at *1
(S.D.N.Y. December 12, 2012). If such extrinsic materials not
attached, integral, or otherwise incorporated into the complaint
are relied upon, the motion must be converted into one for
summary judgment and all parties must be "given a reasonable
opportunity to present all the material that is pertinent to the
motion." Fed. R. Civ. P. 12(d).

Atlantic Neuro did not attach any exhibits to the
complaint. Nonetheless, the parties correctly agree that the MPI
Participating Professional Group Agreement, which was explicitly
named and extensively cited to throughout the complaint, is
incorporated by reference and integral to the complaint. See,
e.g., Chambers, 282 F.3d at 153 n.4 (holding the contracts were
integral to the complaint when the "Amended Complaint is replete
with references to the contracts and requests judicial
interpretation of their terms"); Global Network Commc'ns, Inc.
v. City of New York, 458 F.3d 150, 157 (2d Cir. 2006) (a

- 7 -

document will generally be considered integral to the complaint
when it is a "contract or other legal document containing
obligations upon which the plaintiff's complaint stands or
falls"); Audiotext Network, Inc. v. Am. Tel. & Tel. Co., 62 F.3d
69, 72 (2d Cir. 1995) (contract between parties "integral" to
complaint alleging breach and may be considered on a motion to
dismiss). Thus, insofar as the complaint relies on the terms of
the Agreement, the Court need not accept the description of the
parties but should review those terms itself.

The Agreement includes the 2015 Amendment and 2019
Amendment. Dkt. 42 ("Multiplan, Inc.'s Memorandum of Law in
Support of its Motion to Dismiss"), Exhibit A ("Agreement") §
9.2 ("Group, Participating Professional, and MPI will comply
with any and all of the amendments contained in Exhibit A."); §
9.1 ("This Agreement, together with all Exhibits attached
hereto, constitutes the entire agreement between Group and
MPI.").

Multiplan and the insurance companies argue that the
Agreement, by its terms, also includes the Multiplan Network
Professional Handbooks ("Handbooks"). Id. (quoting Agreement §
3.11) ("Group and each Participating Professional will comply
with terms of the administrative handbooks(s)[.] MPI may, in its
sole discretion, modify the administrative handbook(s) from time
to time and post the modifications to the MPI website.").

- 8 -

Atlantic Neuro contends that the Handbooks were not integrated into the Agreement because they were not attached to it as exhibits, as required by the Section 9.1 integration clause.

Although defendants' reliance on the Handbooks presents a close question, it is ultimately misguided because the Handbooks were not mentioned or relied upon in the Complaint and their relevance is disputed. First, for a document to be integral to the complaint, it is a "necessary prerequisite" that the plaintiff must actually "rely on the terms and effect of the document in drafting the complaint; mere notice or possession is not enough." Global Network Commc'ns, Inc. v. City of New York, 458 F.3d 150, 156 (2d Cir. 2006); see, e.g., Chambers, 282 F.3d at 154 (holding that certain codes of fair practice were improperly considered despite the fact that they might have been incorporated into the contract). Even accepting that the Handbooks are incorporated into the Agreement, Atlantic Neuro did not refer to or rely on them in the complaint.

Second, even if a document is "'integral' to the complaint, it must be clear on the record that . . . there exist no material disputed issues of fact regarding the relevance of the document." Faulkner v. Beer, 463 F.3d 130, 134 (2d Cir. 2006); Nicosia v. Amazon.com, Inc., 834 F.3d 220, 235 (2d Cir. 2016) (excluding on relevance grounds a registration document because "the parties disagree about whether and how the account

registration relates to the contractual relationship"). Here, the relevance of the Handbooks is in dispute, as the parties disagree about whether the Handbooks were incorporated into the Agreement. Therefore, for all the above reasons, the Handbooks are excluded from consideration.

Finally, because facts and allegations raised for the first time in motion papers cannot be used in deciding a motion to dismiss, the facts drawn from Multiplan's and Cigna's websites and referenced for the first time in Atlantic Neuro's opposition to the motions cannot properly be considered when resolving them. See, e.g., Guo v. IBM 401(k) Plus Plan, 95 F. Supp. 3d 512, 526-27 (S.D.N.Y. 2015); Universal Trading & Inv. Co. v. Tymoshenko, No. 11 CIV. 7877, 2012 WL 6186471, at *1 (S.D.N.Y. 2012) ("'New facts and allegations, first raised in a Plaintiff's opposition papers, may not be considered' in deciding a motion to dismiss.").

### III. ERISA Preemption

Cigna and United argue that the Employee Retirement Income Security Act of 1974 ("ERISA") preempts Atlantic Neuro's claims. ERISA was enacted to "protect . . . the interests of participants in employee benefit plans and their beneficiaries" by providing "a uniform regulatory regime over employee benefit plans." Aetna Health Inc. v. Davila, 542 U.S. 200, 208 (2004).

- 10 -

Accordingly, ERISA includes "expansive pre-emption provisions."[1]
Id.

Section 514 of ERISA preempts state laws that "relate to
any employee benefit plan" covered by ERISA. 29 U.S.C. §
1144(a). State laws that may "relate to" a plan include state
statutes and common law causes of action. See Menkes v.
Prudential Ins. Co. of Am., 762 F.3d 285, 294 (3d Cir. 2014). A
state law relates to a covered employee benefit plan for the
purposes of § 514 when it has (1) a "reference to" or (2)
"connection with" such a plan. Cal. Div. of Labor Standards
Enf't v. Dillingham Constr., N.A., 519 U.S. 316, 324 (1997).

First, state laws impermissibly reference an ERISA plan
when the state laws are "premised on the plan." Ingersoll-Rand
Co. v. McClendon, 498 U.S. 133, 140 (1990). State laws are
"premised on" ERISA plans if they are either "claims for
benefits due under a plan or where the plan 'is a critical
factor in establishing liability,'" or if the claims "require
interpreting the plan's terms." Plastic Surgery Ctr., P.A. v.

---

[1] ERISA has two preemption provisions Sections 514 and 502(a).
Section 502(a) is "really a jurisdictional rather than a
preemption doctrine," and, as such, an analysis under it is
unnecessary when, as here, the Court already has diversity of
citizenship subject matter jurisdiction over the claims. Farkas
v. Group Health Inc., No. 18-cv-8535, 2019 WL 657006, at *4
(S.D.N.Y. Feb. 1, 2019). Whether Atlantic Neuro's claims against
Cigna and United are preempted thus turns on the applicability
of ERISA § 514.

Aetna Life Ins. Co., 967 F.3d 218, 230 (3d Cir. 2020) (citations omitted).

A state law claim enforces obligations independent from the ERISA plan, and thus is distinct from a claim for benefit and is not using the plan as a critical factor to establish liability, when only the "*amount* of payment is pegged to the terms of the plan." Id. In Plastic Surgery Center, the Court held that the healthcare provider's claim for breach of implied contract was not preempted by Section 514 because it was "simply not apparent from the face of the pleading" that the provider was an in-network provider. Id. at 231-32. As an out-of-network provider, the provider and insurance company did not have an agreement that cross-referenced an ERISA plan—they had no "pre-existing contractual relationships." Id. at 231. Thus, the scope of the insurance company's duties arose solely from the implied contract. Id. at 231-33 ("Because, as alleged, it is Aetna's oral offers or oral promises (as the case may be) rather than the terms of the plan that define the scope of Aetna's duty, the plans are not 'critical factor[s] in establishing liability.'"). Accordingly, the Court "conclude[d] that only the amount of payment and not the scope of services was to be determined in accordance with the terms of the plan," and as such the state law claims were not preempted. Id. at 232.

Likewise, here, viewing the allegations in the light most favorable to Atlantic Neuro and drawing all reasonable inferences in its favor, as required at the motion to dismiss stage, it is not apparent from the face of the pleadings that Atlantic Neuro was an in-network provider. The alleged implied-in-fact contract created by the use of an insurance card with a Multiplan logo, rather than the terms of the ERISA plan, define the scope of Cigna's and United's duties.

Further, Atlantic Neuro's common law claims do not require interpreting the terms of an ERISA plan. A claim that "turns largely on legal duties generated outside the ERISA context," and "requires only a cursory examination of the plan" is "not the sort of exacting, tedious, or duplicative inquiry that the preemption doctrine is intended to bar." Nat'l Sec. Sys., Inc. v. Iola, 700 F.3d 65, 85 (3d Cir. 2012). Assuming Atlantic Neuro can establish a breach of an implied-in-fact contract, it is not apparent from the pleadings that more than a cursory review of the underlying ERISA plan would be necessary to determine the costs for each service. Plastic Surgery Ctr., 967 F.3d at 233-34 (finding preemption did not apply because, based on the face of the pleadings, determining the rate of payment only necessitated a "cursory examination of the plan"). Atlantic Neuro's claims thus do not relate to an ERISA plan.

Second, state laws have a "connection with" an ERISA plan if they "govern, or interfere with the uniformity of, plan administration." Gobeille v. Liberty Mut. Ins. Co., 577 U.S. 312, 330 (2016). The "in connection with" analysis is guided by ERISA's objective to protect "plan participants and beneficiaries," id. at 334, by striking a "bargain" between the interests of the participants and the interests of the insurers, Plastic Surgery Ctr., 967 F.3d at 235. "[O]ut-of-network providers were not a party to this bargain." Id. at 237. As an out-of-network provider, Atlantic Neuro's claims arise from a relationship ERISA did not intend to govern. Accordingly, ERISA's objective is not furthered by finding Atlantic Neuro's state law claims preempted. Id. (concluding "the relationship between the Center, an out-of-network provider, and Aetna, as plan administrator, does not itself create an impermissible 'connection with' the plan in this case."); Glastin v. Aetna, Inc., No. 18-19262, 2018 U.S. Dist. LEXIS 162857, at *5 (D.N.J. Sept. 24, 2018) ("[C]laims brought by a provider against an insurance company do not implicate ERISA's goals of protecting participants and beneficiaries.").

Further, Atlantic Neuro's claims would result in a one-time payment of damages, which does not interfere with the uniformity of plan administration. See Plastic Surgery Ctr., 967 F.3d at 237 (holding that a breach of an implied contract, which "would

merely result in a one-time payment of damages based on the specific agreement reached by the parties . . . does not impermissibly interfere with plan administration"). Atlantic Neuro's state law claims are thus not preempted.

IV.  Count 1—Breach of Contract Against Multiplan

To state a claim for breach of contract under New Jersey law,[2] a plaintiff must plead facts showing: (1) that "the parties entered into a contract with specific terms;" (2) that "the moving party acted in accordance with the contract;" (3) that "the non-moving party failed to act ('breached') accordingly;" and (4) that "the breach resulted in damages to the moving party." Structured Assets Tr. v. Long, No. A-0164-14T1, 017 WL 1282742, at *2 (N.J. Super. Ct. App. Div. Apr. 6, 2017) (citing Barr v. Barr, 418 N.J. Super. 18, 31-32 (N.J. Super. Ct. App. Div. 2011)).

Atlantic Neuro contends that Multiplan breached several sections of the Agreement, including:

Section 5.2. "[F]or those Clients subject to state or federal law with regard to timely payment of claims, Client shall pay or arrange for the User to pay Group [i.e., Atlantic

---

[2] The Agreement "shall be construed and governed in accordance with . . . the laws of the state in which the health care services are rendered," here New Jersey. Dkt. 42, Exhibit A, § 9.3.

Neuro] the Contract Rate for Covered Services per the
requirements of such state or federal law. . ."

Section 4.7. "MPI will require Clients and its Users to use
the Contract Rates agreed to in this Agreement solely for
Covered Services rendered to Participants covered under a
Program which utilizes the Network."

Section 4.3. "MPI agrees that it has entered into
agreements with Clients that specify that the right to access
the Network, including access to the Contract Rates, shall be
subject to the terms of this Agreement."

Section 4.5. "MPI will require Clients to furnish
Participants with a means of identifying themselves to Group
[i.e., Atlantic Neuro] as covered under a Program with access to
the Network, such as (1) an MPI authorized name and/or logo on
the identification card. . ."

Atlantic Neuro reads the language of Sections 4.3, 4.5,
4.7, and 5.2 as Multiplan representing it would "require its
Clients and Users, including Cigna and United, to reimburse
Atlantic Neuro its 'Contract Rates' for surgical and related
medical services rendered by Atlantic Neuro's medical staff to
patients whose Benefit Programs elected to participate in the
Multiplan program as identified by the Multiplan logo on the
patients' insurance card." Compl. ¶ 62. Atlantic Neuro
interprets the provisions as requiring Multiplan to obligate its

- 16 -

clients, including Cigna and United, to pay the Contract Rate
when the clients choose to access the Multiplan PPO Network. The
Network is accessed each time a patient presents Atlantic Neuro
with a United or Cigna insurance card that has the Multiplan
logo on it. Dkt. 54 ("Plaintiff's Consolidated Memorandum of Law
in Opposition to Defendants' Motion to Dismiss) at 29. Atlantic
Neuro thus plausibly pleads that the Agreement was breached when
Multiplan failed to ensure Cigna and United reimbursed it at the
Contract Rate for services it rendered to patients carrying
Cigna and United insurance cards embossed with the Multiplan
logo. Compl. ¶ 66.

Multiplan argues that it breached no provisions of the
Agreement. It characterizes Atlantic Neuro's claims as claims
for payment, which the Agreement insulates against. Dkt. 42,
Exhibit A ("Agreement"), § 4.1 ("MPI is not the administrator,
insurer, underwriter, or guarantor of Programs, and MPI is not
liable for the payment of services under Programs."). However,
Atlantic Neuro does not allege that Multiplan is liable for
payment of services. Instead, Atlantic Neuro merely seeks to
hold Multiplan liable for damages for allegedly breaching its
obligations under Sections 4.3, 4.5, 4.7, and 5.2. Although the
economic effect seems the same, the legal theories are not.
Under § 4.1, Multiplan is not to be a guarantor or insurer that
(regardless of cause) must pay the fee that is not otherwise

paid. But it is responsible for injury allowed to occur by its own failure to enforce its contractual obligations. See HCA Health Servs. of Va. v. CoreSource, Inc., No. 3:19-cv-406, 2019 U.S. Dist. LEXIS 209470, at *5 (E.D.Va. Dec. 4, 2019) (rejecting a similar argument advanced by Multiplan); Sarasota Cty. Pub. Hosp. Dist. v. Multiplan, Inc., No. 8:18-cv-252, 2018 U.S. Dist. LEXIS 168836, at *4 n.4 (M.D. Fla. Oct. 1, 2018) (same).

Moreover, Multiplan argues that the contested provisions only require it to ensure its clients pay the Contract Rates for Covered Services when clients exercise their right to access the network, which is not activated simply by a patient using an insurance card with the MPI logo on it. It points to The Plastic Surgery Ctr., P.A., v. Cigna Health & Life Insurance for its broader finding that the placement of the logo was insufficient to create an implied-in-fact contract and bind the insurance company to pay the Contract Rates.

Given those colorable arguments, rooted in a view of contractual provisions, it would be premature to dismiss the claim at this juncture. See Subaru Distributors Corp. v. Subaru of Am., Inc., 425 F.3d 119, 122 (2d Cir. 2005) ("We are not obliged to accept the allegations of the complaint as to how to construe such documents, but at this procedural stage, we should resolve any contractual ambiguities in favor of the plaintiff."); Berlin Med. Assocs., P.A. v. CMI New Jersey

- 18 -

Operating Corp., No. A-3034-04T5, 2006 WL 2162435, at *4-5 (N.J.
Super. Ct. App. Div. Aug. 3, 2006).

     V.   Counts II and III—Breach of Contract against Cigna and

United

     Atlantic Neuro alleges that Cigna and United breached an
implied-in-fact contract by failing to pay Atlantic Neuro the
Contract Rates. An implied-in-fact contract was allegedly formed
because, by including the Multiplan logo on their insurance
cards, Cigna and United offered to pay providers at Multiplan's
Contract Rates and Atlantic Neuro accepted by performing and
rendering medical services to the insureds. Compl. ¶¶ 32-49, 69-
70, 74-75.  Cigna and United disavow the creation of an implied
contract claiming there was no offer and acceptance.

     "The elements necessary to form an implied-in-fact contract
are identical to those required for an express agreement." In re
Penn Cent. Transp. Co., 831 F.2d 1221, 1228 (3d Cir. 1987). Thus
implied-in-fact contracts likewise arise "from mutual agreement
and intent to promise." St. Paul Fire & Marine Ins. Co. v.
Indem. Ins. Co. of N. Am., 32 N.J. 17, 23 (1960). Contracts
implied-in-fact differ from their express contemporaries "only
insofar as the parties' agreement and assent thereto have been
manifested by conduct instead of words.'" Id. Therefore, the
relevant inquiry into whether an implied-in-fact contract exists
is whether the conduct of the defendant, as viewed by a

- 19 -

reasonable person in the relevant custom or trade, revealed a promise to pay. Plastic Surgery Ctr., P.A. v. Cigna Health & Life Ins. Co., No. CV 17-2055, 2019 WL 1916205, at *6 (D.N.J. Apr. 30, 2019); Duffy v. Charles Schwab & Co., Inc., 123 F. Supp. 2d 802, 804 (D.N.J. 2000).

Here, the inclusion of the Multiplan logo on Cigna's and United's insurance cards does not sufficiently demonstrate that Cigna and United offered to pay Atlantic Neuro 70% of the charged amount. The card logo advertises to the viewer that Cigna and United are in the business, not that they have underwritten the cardholders' particular transaction. See Plastic Surgery Ctr., P.A., 2019 WL 1916205, at *7 ("Cigna's alleged placement of Multiplan's logo on an insurance card which was provided to K.D., with nothing more, does not reasonably satisfy the contractual elements of offer and acceptance."); Twp. Of Neptune v. N.J. Dep't of Envtl. Prot., 425 N.J. Super. 422, 437-38 (App. Div. 2012) (finding no implied contract when "there is no evidence that the [defendant] ever agreed, through its statements or writings," to perform as plaintiff alleged).

Based on the pleadings, there is no basis to find that a contract or a meeting of the minds occurred between Atlantic Neuro and Cigna and United. Therefore, Cigna's and United's Motions to Dismiss Counts II and III are granted.

- 20 -

VI. Count IV—Breach of the Implied Warranty of Good Faith
and Fair Dealing Against All Defendants

There is an implied covenant of good faith and fair dealing
in every New Jersey contract, meaning "'neither party shall do
anything which will have the effect of destroying or injuring
the right of the other party to receive the fruits of the
contract." Sons of Thunder, Inc. v. Borden, Inc., 148 N.J. 396,
421 (1997) (quoting Palisades Properties, Inc. v.
Brunetti, 44 N.J. 117, 130 (1965)). To sustain a claim for
breach of the implied covenant, the underlying conduct must be
distinct from that alleged in a corresponding breach of contract
claim. See Wade v. Kessler Inst., 172 N.J. 327, 345
(2002) (finding that, where same conduct underlies both claims,
"there can be no separate breach of an implied covenant of good
faith and fair dealing"); MZL Cap. Holdings, Inc v. TD Bank,
N.A., 734 F. App'x 101, 105-06 (3d Cir. 2018) (dismissing, under
New Jersey law, the  breach of implied covenant claim because it
was duplicative of the breach of contract claim and plaintiff
failed to show defendant acted in bad faith). Further, "[p]roof
of 'bad motive or intention' is vital to an action for breach of
the covenant." Brunswick Hills Racquet Club, Inc. v. Route 18
Shopping Ctr. Assocs., 182 N.J. 210, 225 (2005).

A. Against Multiplan

Atlantic Neuro fails to state a claim for breach of the implied warranty of good faith and fair dealing against Multiplan. Atlantic Neuro's claim is redundant, simply reiterating the allegations underlying its breach of contract claim with the sole additional claim that Multiplan engaged in "acts of commission and omission that were wrongful and without justification." Compl. ¶ 80. No particularities are provided. Nor is there any indication that Multiplan acted with bad intention.

Nevertheless, even if the conduct underlying the breach of the implied convent claim were sufficiently distinct from the breach of contract claim, there is no basis in the complaint to support an independent claim of breach of an implied warranty. Under New Jersey law, an independent cause of action for breach of an implied warranty can arise in three situations:

> 1) to allow the inclusion of additional terms and conditions not expressly set forth in the contract, but consistent with the parties' contractual expectations; (2) to allow redress for a contracting party's bad-faith performance of an agreement, when it is a pretext for the exercise of a contractual right to terminate, even where the defendant has not breached any express term; and (3) to rectify a party's unfair exercise of discretion regarding its contract performance.

Berlin Med. Assocs., P.A. v. CMI New Jersey Operating Corp., No. A-3034-04T5, 2006 WL 2162435, at *9 (N.J. Super. Ct. App. Div.

Aug. 3, 2006); Seidenberg v. Summit Bank, 348 N.J. Super. 243, 257, 260 (App.Div.2002).

Atlantic Neuro accuses Multiplan of unfairly exercising its discretion to perform under the Agreement. Dkt. 54 at 39. But no provisions in the Agreement expressly endow Multiplan with discretion. Berlin Med. Assocs., P.A. v. CMI New Jersey Operating Corp., No. A-3034-04T5, 2006 WL 2162435, at *9 (N.J. Super. Ct. App. Div. Aug. 3, 2006) ("There are no portions of the standard provider contract cited by plaintiffs in which CHN was expressly reposed with discretion, thereby eliminating a covenant-based theory that CHN had abused its discretion."). Accepting Atlantic Neuro's interpretation of the Agreement, if a client accesses the network for Covered Services, Multiplan is obligated to ensure the client pays the Contract Rate of 70% of the amount billed. Count IV is therefore dismissed against Multiplan.

B. Against Cigna and United

"No doubt, a breach of the implied covenant of good faith and fair dealing may not arise 'absent an express or implied contract.'" Noto v. Skylands Cmty. Bank, No. A-0322-04T3, 2005 WL 2362491, at *6 (N.J. Super. Ct. App. Div. Sept. 28, 2005) (quoting Wade v. Kessler, 172 N.J. 327, 345 (2002)). Here, there is no express or implied-in-fact contract between Atlantic Neuro and Cigna or United. Even if there were, Atlantic Neuro fails to

maintain a claim for breach of the implied covenant against Cigna and United for the same reasons stated above (similarity to breach of contract claim and no discretionary terms). Cigna's and United's Motions to Dismiss Count IV are granted.

VII. Count V-Promissory Estoppel Claim Against All

Defendants

To state a claim for promissory estoppel under New Jersey law, a plaintiff must allege: "1) a clear and definite promise, 2) made with the expectation that the promisee will rely upon it, 3) reasonable reliance upon the promise, 4) which results in definite and substantial detriment." Lobiondo v. O'Callaghan, 357 N.J. Super. 488, 499 (App. Div. 2003). Promissory estoppel is an alternative theory to breach of contract and a party may simultaneously plead both claims. See Goldfarb v. Solimine, 245 N.J. 326, 340-41 (2021) ("Suits to enforce contracts and suits predicated upon promissory estoppel are thus different in both their requisite elements and their goals."); Direct Inv. Partners AG v. Cerberus Glob. Invs., LLC, 2008 U.S. Dist. LEXIS 8953, at *21 (S.D.N.Y. Feb 7, 2008).

A. Against Multiplan

Atlantic Neuro alleges that Multiplan represented that its clients would pay Atlantic Neuro the Contract Rate when the clients accessed the Multiplan Network. Compl. ¶ 2. It further alleges that Multiplan knew, or should have known, that Atlantic

- 24 -

Neuro "relied on the express written representations made by Multiplan that Atlantic Neuro would be paid its Contract Rates for services rendered to any patient presenting an insurance cared containing the Multiplan logo." Id. ¶ 9. Finally, Atlantic Neuro alleges it did rely on the promises to the detriment of lost fees. Compl. ¶¶ 2-7, 77, 85.

That is sufficient to state a claim and accordingly Multiplan's Motion to Dismiss Count V is denied.

B. Against Cigna and United

Atlantic Neuro alleges that Cigna and United promised to pay Atlantic Neuro "at the Contract Rates by way of preparing and issuing insurance cards bearing the Multiplan logo with the expectation that Atlantic Neuro would identify the Multiplan logo and provide treatment to United and Cigna insureds." Comp ¶¶ 3-4, 82-86. Cigna and United disclaim making such a promise.

Under New Jersey law, a "clear and definite promise" is the "sine qua non" of a promissory estoppel claim. Malaker Corp. Stockholders Protective Comm. v. First Jersey Nat'l Bank, 163 N.J. Super. 463, 479 (App. Div. 1978). Even if Multiplan's logo was included on Cigna's and United's insurance cards, this fact alone does not sufficiently aver that Cigna and United promised to compensate Atlantic Neuro at the Contract Rates. See Plastic Surgery Ctr., P.A. v. Cigna Health & Life Ins. Co., No. CV 17-2055, 2019 WL 1916205, at *7 (D.N.J. Apr. 30, 2019)(finding the

Multiplan logo on an insurance card did not amount to a promise to pay); c.f. Malaker, 163 N.J. Super. at 480 (finding that an "implied" promise of a loan of an indefinite amount was insufficient to state a claim of promissory estoppel). Because Atlantic Neuro does not allege Cigna and United made a clear and definite promise, their Motions to Dismiss Count V are granted.

VIII.     Count VI—Quantum Merit Against All Defendants

Finally, in New Jersey, to allege a claim for unjust enrichment, a party must plead the following elements: "(1) at plaintiff's expense, (2) defendant received benefit, (3) under circumstances that would make it unjust for defendant to retain benefit without paying for it." In re K-Dur Antitrust Litig., 338 F. Supp. 2d 517, 544 (D.N.J. 2004) (quoting Restatement of Restitution § 1 (1937)). A claim of quantum merit requires a showing that the defendant was unjustly enriched. See F. Bender, Inc. v. Jos. L. Muscarelle, Inc., 304 N.J. Super. 282, 285 (App. Div. 1997). Atlantic Neuro alleges "Cigna and United . . . retained money that should have been dispersed to Atlantic Neuro . . . whereby enrich[ing] Cigna and United at Atlantic Neuro's expense." Dkt. 54 at 46.

However, Atlantic Neuro cannot adequately plead that any of the Defendants received a benefit that would be unjust for them to retain. "District courts have consistently dismissed unjust enrichment claims under substantially similar circumstances,

reasoning that, if anything, the benefit is derived solely by the insured party." Plastic Surgery Ctr., P.A. v. Cigna Health & Life Ins. Co., No. CV 17-2055, 2019 WL 1916205, at *8 (D.N.J. Apr. 30, 2019)(dismissing an unjust enrichment claim against Multiplan and Cigna because neither party received a benefit); Broad St. Surgical Ctr., LLC v. UnitedHealth Group, Inc., No. 11-2775, 2012 WL 762498, at *8 (D.N.J March 6, 2012) ("In this case, the Plaintiff provided services to [medical patients] and any benefit conferred was conferred on [the medical patients] not [the medical insurer].") (quoting Travelers Indem. Co. v. Losco Group, Inc., 150 F. Supp. 2d 556, 562 (S.D.N.Y. 2001)). Accordingly, Atlantic Neuro's claim for unjust enrichment fails against all the defendants.

   IX.   Leave to Amend

   "[L]eave to amend 'shall be freely given' in the absence of countervailing factors such as undue delay, bad faith or dilatory motive, undue prejudice to the opposing party, or futility of the amendment." In re Alcatel Sec. Litig., 82 F. Supp. 2d 513, 535 (S.D.N.Y. 2005); Cresswell v. Sullivan & Cromwell, 922 F.2d 60, 72 (2d Cir. 1990). These 'countervailing factors' are not present here. Atlantic Neuro is granted leave to file an Amended Complaint within 45 days.

   X.   Conclusion

Cigna's and United's Motions to Dismiss all Counts as against them are granted, and Multiplan's Motion to Dismiss is denied as to Claims I and V and granted as against Claims IV and VI. Atlantic Neuro is granted leave to file its First Amended Complaint within 45 days of this Opinion and Order.

So ordered.

Dated: January 18, 2022
New York, New York

*Louis L. Stanton*

LOUIS L. STANTON

U.S.D.J.