ORIGINAL

```
┌─────────────────────────────┐
│ USDC SDNY                   │
│ DOCUMENT                    │
│ ELECTRONICALLY FILED        │
│ DOC #:_____       │
│ DATE FILED: 1/11/23         │
└─────────────────────────────┘
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - -X
ATLANTIC NEUROSURGICAL
SPECIALISTS, P.A.,

                    Plaintiff,                    20 Civ. 10685 (LLS)

          - against -                            OPINION & ORDER

MultiPlan, INC., CONNECTICUT
GENERAL LIFE INSURANCE COMPANY,
UNITED HEALTHCARE GROUP COMPANY,

                    Defendants.

- - - - - - - - - - - - - - - - - -X

     Atlantic Neurosurgical Specialists, P.A. ("Atlantic Neuro")
alleges it was underpaid for medical services it provided to
three patients who were insured by either Cigna Health and Life
Insurance Company ("Cigna") or UnitedHealthcare Insurance
Company ("United"). Atlantic Neuro asserts various contractual
and quasi-contractual claims under New Jersey state law against
Cigna and United, and the administering preferred provider
organization ("PPO"), MultiPlan, Inc. ("MultiPlan") to recover
the difference it is allegedly owed.

     Defendants separately move to dismiss the First Amended
Complaint for failure to state a claim. For the reasons set
forth herein, Cigna's and United's motion is granted and
MultiPlan's motion is granted as to Counts IV and VI but denied
as to Counts I and V.

**BACKGROUND**

1

The following facts are taken from the First Amended Complaint and are presumed to be true for the purpose of this ruling. The parties' familiarity with the action is assumed and the Court will only recount what is necessary for disposition.

Atlantic Neuro is a neurosurgical healthcare provider in New Jersey. Dkt. No. 66 (First Amended Compl. ("FAC")) ¶ 2. Cigna and United administer employee benefit health plans, Benefit Programs, and reimburse "healthcare expenses incurred by program insureds for services and/or products covered by the Benefit Programs." Id. ¶¶ 10, 14.

MultiPlan administrators a Preferred Provider Organization ("PPO") Network. MultiPlan offers a Complementary Provider Network, which acts as a secondary network to an insurance company's preferred provider network. Id. ¶ 26. To create the Complementary Provider Network, MultiPlan contracts with out-of-network providers, on one hand, who agree to receive a discounted rate (the Contract Rate) for services provided to patients whose health benefit plans participate in MultiPlan's Complementary Provider Network. Id. ¶ 27.

On the other hand, MultiPlan contracts with health plan administrators for the right to access the Network and provide clients the ability to visit otherwise out-of-network providers at a discounted cost. "Notably, when a health plan administrator such as Cigna or United contracts with MultiPlan to access its

2

Complementary Provider Network and the Contract Rate payable to
[out-of-network] providers thereunder, not every one of the
plans they administer are MultiPlan's Complementary Provider
Network, i.e., not every one of [the health plan
administrator's] plans participate in MultiPlan's Complementary
Provider Network." Id. ¶ 28. Health plan administrators benefit
from using the Complementary Provider Network by either (1)
paying the discounted lower rate, as opposed to the standard
out-of-network rate, for claims they are responsible to pay
directly or (2) receiving from their self-insured clients a
higher "Shared Savings Fee," a percentage of the difference
between the provider's standard out-of-network charge and the
amount ultimately paid on the claim. Id. ¶¶ 31-32.

Cigna and United have contracted with MultiPlan to join the
Complementary Provider Network. Id. ¶¶ 12, 16. Both health plan
administrators advertise their association with MultiPlan on
their respective websites. Cigna's "website states that 'if the
MultiPlan Savings Program logo appears on your Cigna ID card,
you may be eligible to receive discounts when using an ONET
[out-of-network], non-participating health care professional or
facility that participates in the Network Savings Program.'" Id.
¶ 66. Similarly, United's website states: "United may have the
right to access contracts and discounts that certain third
parties have with ONET providers. When this program applies, the

3

ONET provider's billed charges will be discounted." Id. ¶ 68.
Atlantic Neuro has not entered into an express contract with
either Cigna or United.

On November 1, 2011, Atlantic Neuro contracted with
MultiPlan to be a participating provider. Id. ¶ 35. Atlantic
Neuro alleges that under the contract, the MultiPlan
Participating Professional Group Agreement ("Agreement"),
MultiPlan represented that its clients, including Cigna and
United, "would pay Contract Rates to Atlantic Neuro for surgical
and other related medical services rendered to Atlantic Neuro's
patients enrolled in Benefit Programs underwritten and/ or
administered by Cigna or United when any such patient accesses
MultiPlan's Complementary Provider Network." Id. ¶ 36.

Thus, Atlantic Neuro alleges that the Agreement entitles it
to be paid at the Contract Rate, 70% of its billed charges, when
it provides covered services to patients "presenting" a Cigna or
United "insurance card containing the MultiPlan logo." Id. ¶¶
29, 37, 39. In exchange, Atlantic Neuro alleges it is bound to
provide services when presented with a patient participating in
the MultiPlan Network and cannot balance bill the patient for
the difference between the Contract Rates and its usual fees.
Id. ¶¶ 38, 42.

Atlantic Neuro has provided services to patients presenting
a Cigna or United insurance card that also bears the MultiPlan

4

logo. When a plan member's card has a MultiPlan logo on it,
Cigna has paid Atlantic Neuro the Contract Rate on many
occasions, before, during, and and after the claims arose in
this case: July 29, 2016; February 14, 2017; April 18 and 28,
2017; May 15, 20, and 25, 2017; and July 1, 5, and 16, 2017;
December 1, 2017; June 27, 2018; February 23, 2019; March 5,
2019; April 15 and 24, 2019; May 7, 2019; June 10, 11, 12, 13,
14, and 16, 2019; July 15, 2019; and September 8, 2019. Id. ¶¶
48-49; 51-52. On each occasion, Cigna provided a written
Explanation of Benefits ("EOB") letter to Atlantic Neuro stating
"HEALTH CARE PROFESSIONAL: DO NOT BILL THE PATIENT FOR THE
MULTIPLAN DISCOUNT THROUGH MULTIPLAN." Id. ¶¶ 50-52.

Likewise, when a plan member's card has a MultiPlan logo on
it, United has paid Atlantic Neuro the Contract Rate on many
occasions, before, during, and and after the claims arose in
this case: August 29, 2017; September 1 and 19, 2017; October
13, 16, 24, and 31, 2017; November 6, 9, 10, 11, 12, 13, and 29,
2017; December 4, 2017; January 2, 4, 7, and 18, 2019; March 7,
2019; April 6, 22, 26, and 19, 2019; and February 9, 2021. Id.
¶¶ 56, 58-59. On each occasion, United provided a written EOB
letter to Atlantic Neuro stating "THIS PHYSICIAN OR HEALTHCARE
PROVIDER IS OUT-OF-NETWORK, BASED ON AN AGREEMENT WITH
MULTIPLAN, THE PROVIDER HAS ACCEPTED A DISCOUNT FOR THIS

SERVICE. THE DISCOUNT SHOWN IS YOUR SAVINGS AND NOT INCLUDED IN THE AMOUNT YOU OWE." Id. ¶¶ 57-59.

This case arises from Atlatnic Neuro's performance of medical services on three such Cigna or United patients for which Atlantic Neuro alleges it was not paid the required Contract Rate. Id. ¶¶ 75-76. Atlantic Neuro alleges that all of the patients' Cigna or United  insurance cards included the MultiPlan Logo and that all the services rendered qualify as "covered services" under the Agreement. Id. ¶¶ 75-76; 83; 86; 89; 94; 99; 102; and 105.

First, Atlantic Neuro performed three surgical procedures on H.I., who was insured through a Benefit Program administered by Cigna on behalf of CBRE. Id. ¶ 79. For the procedure rendered on November 9, 2017, Atlantic Neuro alleges Cigna only paid it $1,493.32 even though it submitted charges to Cigna in the amount of $39,020.00. Id. ¶¶ 81; 83. Cigna's sole explanation for its level of payment was that it was subject to a "pricing review performed by an outside vendor." Id. ¶ 84. For services rendered on January 25, 2019, Atlantic Neuro alleges Cigna paid nothing towards submitted charges of $137,773.46. Id. ¶¶ 85-86. For services rendered on March 6, 2019, Atlantic Neuro alleges Cigna only paid $6,571.20 although Atlantic Neuro submitted charges in the amount of $181,470.68. Id. ¶ 88-89.

Second, Atlantic Neuro rendered services to M.D., a patient insured by United on behalf of Control4. Id. ¶ 91. Atlantic Neuro submitted claims totaling $49,803.02 for the rendered services but United paid only $481.98. Id. ¶ 94.

Third, Atlantic Neuro thrice provided medical care to C.F., who was insured by New York University's Benefit Program, under the administration of United. Id. ¶ 96. United underpaid on all of those claims, paying nothing towards December 17, 2018 services totaling $41,600, paying nothing towards December 21, 2018 services totaling $41,600, and paying $4,008.94 towards February 22, 2019 services totaling $42,681.60. Id. ¶¶ 99, 102, 105.

In total, Atlantic Neuro alleges that it was underpaid $431,208.69. Id. ¶ 78. On December 18, 2020, Atlantic Neuro brought suit to recover the amount owed alleging: (1) Breach of Contract against MultiPlan; (2) Breach of Contract against Cigna; (3) Breach of Contract against United; (4) Breach of Implied Warranty of Good Faith and Fair Dealing against all Defendants; (5) Promissory Estoppel against all Defendants; and (6) Quantum Meruit against all Defendants. Dkt. No. 1.

On January 8, 2022, the Court held that ERISA preemption did not apply but nonetheless dismissed all claims against Cigna and United. Dkt. No. 63. Against MultiPlan, the Court dismissed

the claims for Breach of the Implied Warranty and Quantum
Meruit. Id. Leave to amend was granted for all counts. Id.

The First Amended Complaint was filed on March 4, 2022. It
again alleged: (1) Breach of Contract against MultiPlan; (2)
Breach of Implied Contract against Cigna; (3) Breach of Implied
Contract against United; (4) Breach of Implied Warranty of Good
Faith and Fair Dealing against all Defendants; (5) Promissory
Estoppel against all Defendants; (6) Quantum Meruit against all
Defendants. Dkt. No. 66. Defendants each moved to dismiss for
failure to state a claim upon which relief can be granted and
MultiPlan moved for reconsideration as to the COurt's previous
ruling upholding the Breach of Contract and Promissory Estoppel
claims against it.  Additionally, Cigna alleges that Atlantic
Neuro's state law claims are preempted by ERISA.

As MultiPlan does not allege any "controlling decisions or
data that the court overlooked," the Court declines to reexamine
its initial rulings that Atlantic Neuro successfully pled breach
of contract and promissory estoppel claims against MultiPlan and
that Atlantic Neuro's claims are not preempted by ERISA. See
McGraw-Hill Glob. Educ. Holdings, LLC v. Mathrani, 293 F. Supp.
3d 394, 397 (S.D.N.Y. 2018). Therefore, the Court will only
address the motions to dismiss the claims for breach of implied

8

contract and promissory estoppel against Cigna and United and for quantum meruit against all defendants.[1]

## DISCUSSION

I.   <u>Legal Standards</u>

The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." <u>Goldman v. Belden</u>, 754 F.2d 1059, 1067 (2d Cir. 1985). The court reviews the complaint liberally, drawing all reasonable inferences in the plaintiff's favor and accepting as true all factual allegations, except for any legal conclusions couched as factual allegations. <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009); <u>Nicosia v. Amazon.com, Inc.</u>, 834 F.3d 220, 230 (2d Cir. 2016).

"To survive a motion to dismiss, a complaint must plead 'enough facts to state a claim to relief that is plausible on its face.'" <u>Ruotolo v. City of New York</u>, 514 F.3d 184, 188 (2d Cir. 2008) (quoting <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the

---

[1] The First Amended Complaint also alleged a breach of the implied warranty of good faith and fair dealing against all defendants. But, because Atlantic Neuro does not oppose defendants' motions to dismiss that claim, the claim is dismissed. Dkt. No. 88 ("Plaintiff's Motion in Opposition") at 1.

reasonable inference that the defendant is liable for the
misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678
(2009). This requires "more than labels and conclusions, and a
formulaic recitation of the elements of a cause of action."
Twombly, 550 U.S. at 570 (citations omitted).

In deciding a motion to dismiss pursuant to Rule 12(b)(6),
the court may consider documents that are attached to the
complaint, incorporated by reference to the complaint, or relied
upon heavily such that they become integral to the complaint.
Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002);
DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010).

   II.   Counts II and III-Breach of Implied Contract against
         Cigna and United

Atlantic Neuro argues that Cigna's and United's conduct and
course of dealing, as well as their marketing communications
revealed a promise to pay the Contract Rate to Atlantic Neuro
for medical services provided to insureds whose plan was in
MultiPlan's network. FAC ¶¶ 116-21; 125-30. That conduct, which
Atlantic Neuro references, includes the placement of the
MultiPlan logo on insurance cards issued by Cigna and United to
H.I., M.D., and C.F., which Atlantic Neuro allegedly relied upon
in determining whether to render medical services. FAC ¶¶ 118,
127. It also includes a history of Cigna and United paying the
Contract Rate for services provided to their other patients who

had insurance cards with the MultiPlan logo. FAC ¶¶ 48-52; 53-59. And, in conjunction with paying the Contract Rate for the services provided to the aforementioned other patients, Cigna's and United's provision to Atlantic Neuro an Explanation of Benefits ("EOB"), which acknowledged that the amount being paid to Atlantic Neuro was calculated in reference to a contract a MultiPlan. FAC ¶¶ 50, 57, 59, 61.

To state a claim for breach of implied contract under New Jersey law,[2] a plaintiff must plead facts showing that: (1) "the parties entered into a contract with specific terms;" (2) "the moving party acted in accordance with the contract;" (3) "the non-moving party failed to act ('breached') accordingly;" and (4) "the breach resulted in damages to the moving party." See Structured Assets Tr. v. Long, No. A-0164-14T1, 017 WL 1282742, at *2 (N.J. Super. Ct. App. Div. Apr. 6, 2017) (citing Barr v. Barr, 418 N.J. Super. 18, 31-32 (N.J. Super. Ct. App. Div. 2011)); St. Paul Fire & Marine Ins. Co. v. Indem. Ins. Co. of N. Am., 32 N.J. 17, 23, 158 A.2d 825, 828 (1960) ("An implied-in-fact contract is in legal effect an express contract.").

---

[2] The Agreement "shall be construed and governed in accordance with . . . the laws of the state in which the health care services are rendered," here New Jersey. Dkt. 42, Exhibit A, § 9.3.

The critical issue here is whether the parties entered into an implied-in-fact contract. "The true implied contract consists of an obligation 'arising from mutual agreement and intent to promise but where the agreement and promise have not been expressed in words.'" Id. (citation omitted). Therefore, the relevant inquiry into whether an implied-in-fact contract exists is whether the conduct of the defendant, as viewed by a reasonable person in the relevant custom or trade, revealed a promise to pay. Plastic Surgery Ctr., P.A. v. Cigna Health & Life Ins. Co., No. CV 17-2055, 2019 WL 1916205, at *6 (D.N.J. Apr. 30, 2019); Duffy v. Charles Schwab & Co., Inc., 123 F. Supp. 2d 802, 804 (D.N.J. 2000).

Here, there was no mutual agreement to pay Atlantic Neuro the Contract Rates for medical procedures performed on H.I., M.D., and C.F. The Court has already held that "the inclusion of the MultiPlan logo on Cigna's and United's insurance cards does not sufficiently demonstrate that Cigna and United offered to pay Atlantic Neuro" the contract amount. Op. at 20. As the Court explained, the inclusion of the MultiPlan logo on the Cigna and United cards advertises that the insurers are in the business of offering discounted rates for out of network providers, not that they will underwrite every procedure. Id.

Viewing the facts in the light most favorable to Atlantic Neuro, the insurers' marketing materials and course of conduct

also only shows that Cigna and United were in business with
MultiPlan and not that they had agreed to pay the Contract Rates
for the procedures needed by these three individuals. There is
no dispute that Cigna and United have contracted with MultiPlan
to have the right to access MultiPlan's network of medical
providers. The question is instead whether Cigna and United had
promised Atlantic Neuro that they would access the MultiPlan
network and pay the contract rates for H.I.'s, M.D.'s, and
C.F.'s procedures.

Cigna's and United's payment history on other claims does
not provide any evidence of their intent to agree to pay the
contract rates for the procedures under dispute here. Atlantic
Neuro does not allege that Cigna and United always paid the
Contract Rate. A history of paying the rate on some claims does
not amount to giving binding assent to always pay the Contract
rate.

Cigna's and United's marketing materials similarly evidence
an association with MultiPlan, but do not commit the insurers'
to paying the Contract Rate for the claims underlying this case.
The First Amended Complaint alleges that Cigna's website states,
"'if the MultiPlan Savings Program logo appears on your Cigna ID
card, you may be eligible to receive discounts when using an
ONET, non-participating health care professional or facility
that participates in the Network Savings Program.'" FAC ¶ 66.

13

But the First Amended Complaint omits the remainder of the quote which states "Discounts are not guaranteed." Dkt. No. 78 ("Declaration of E. Evans Wohlforth, Jr."), Ex. A. It alleges that United's website says United clients "may have the right to access contracts and discounts that certain third parties have with ONET providers. When this program applies, the ONET provider's billed charges will be discounted." FAC ¶ 68. In the face of these provisos, no professional healthcare provider could plausibly believe the language on the websites is a binding promise to pay the Contract Rates. See Read v. Profeta, 397 F. Supp. 3d 597, 626 (D.N.J. 2019) ("An implied-in-fact contract is 'unenforceable for vagueness when its terms are too indefinite to allow a court to determine with reasonable certainty what each party has promised to do.'" (citation omitted)).

Finally, the fact that in the administration of other patient's insurance claims Cigna and United sent Atlantic Neuro EOB's that referenced the MultiPlan agreement has no bearing on this case. Atlantic Neuro did not receive any such EOB in connection with H.I., M.D., and C.F. Rather, "Cigna's sole explanation for its level of payment was that it was subject to a 'pricing review performed by an outside vendor.'" FAC ¶ 84.

Because the First Amended Complaint fails to adequately show that Atlantic Neuro can prove there was a meeting of the

14

minds between it and Cigna and United to pay the Contract Rates for H.I.'s, M.D.'s, and C.F.'s medical procedures, Counts Two and Three are dismissed.

   III. Count V-Promissory Estoppel against Cigna and United

   To state a claim for promissory estoppel under New Jersey law, a plaintiff must allege: "1) a clear and definite promise, 2) made with the expectation that the promisee will rely upon it, 3) reasonable reliance upon the promise, 4) which results in definite and substantial detriment." Lobiondo v. O'Callaghan, 357 N.J. Super. 488, 499 (App. Div. 2003). Promissory estoppel is an alternative theory to breach of contract and a party may simultaneously plead each claim. See Goldfarb v. Solimine, 245 N.J. 326, 340-41 (2021) ("Suits to enforce contracts and suits predicated upon promissory estoppel are thus different in both their requisite elements and their goals.").

   The First Amended Complaint alleges that Cigna's and United's "collective, consistent, and repeated representations" that they would pay the Contract Rate for the services rendered to H.I., M.D., and C.F. "represented a promise to pay Atlantic Neuro." FAC ¶ 141. The representations the First Amended Compliant relies on is not only the fact that the MultiPlan logo appeared on the Cigna and United insurance cards used by H.I., M.D., and C.F., but also the statements on the Cigna and United websites acknowledging their participation in the MultiPlan

15

Network, FAC ¶¶  65-68; 72, and the course of dealing between
the parties–the 10 prior occasions for Cigna and 15 for United
on which the insurers paid the Contract Rate for medical
services provided to patients whose cards had the MultiPlan logo
and issued EOBs that acknowledged that the reimbursement amount
was based on participation in the MultiPlan Network, FAC ¶¶
48-50; 55-57.

The First Amended Complaint does not adequately allege
Cigna and United made a promise to pay. The general expectation
of a benefit is insufficient to establish a claim for promissory
estoppel. E. Orange Bd. Of Educ. v. N.J. Sch. Constr. Corp., 405
N.J. Super. 132, 147-48 (App. Div.), cert. denied, 199 N.J. 540
(2009) ("general expectation" of a benefit is insufficient to
establish a claim for promissory estoppel). Thus, while the
First Amended Complaint delivers far more detail illustrating
Cigna's and United's participation in the MultiPlan Network, it
fails to state a claim for promissory estoppel because it does
not provide any support for the claim that Cigna and United
promised to pay the Contract Rates for the specific medical
services received by  H.I., M.D., and C.F.

The course of dealing between the parties cannot alone
maintain a claim for promissory estoppel without an accompanying
unambiguous promise. See North Jersey Brain & Spine Center v.
Aetna Life Ins. Co., No. L-5817-18, 2019 WL 4889507, at *16

16

(N.J.Super.L. Oct. 01, 2019) (maintaining a claim for promissory estoppel based on the parties course of dealing because the defendant gave a promise to pay for each service through either a prior authorization or an advisement that such authorization was unnecessary); <u>Malaker Corp. S'holders Protective Comm. v. First Jersey Nat. Bank</u>, 163 N.J. Super. 463, 480, 395 A.2d 222, 230 (App. Div. 1978)(finding that an "implied" promise of a loan of some indefinite amount was insufficient to support an promissory estoppel claim).

No unambiguous promise is shown to have ever been made between Cigna and United on one hand and Atlantic Neuro on the other. The placement of the MultiPlan logo on the Cigna and United insurance cards and the statements made on Cigna's and United's websites do not mean Cigna and United promised to pay the Contract Rates for H.I.'s, M.D.'s, and C.F.'s procedures. In fact, they provide notice that every claim might not be accepted.

The Court has already held that the placement of the MultiPlan logo on Cigna's and United's insurance cards "alone does not sufficiently aver that Cigna and United promised to compensate Atlantic Neuro at the Contract Rates." Dkt. No. 63 at 25. This is especially true given that the United insurance card presented by M.D. and C.F. said "this card does not guarantee

coverage," the exact opposite of an unambiguous promise to pay. See Dkt. No. 84 (Declaration of Matthew P. Mazzola), Exs. B & C.

The additional evidence of the statements on Cigna's and United's websites does nothing to change the statement of affiliation created by the placement of the MultiPlan logo into a promise to pay. As discussed above, the statements on the website made it clear that the MultiPlan rates would not apply to all scenarios.

Atlantic Neuro reliance on N. Jersey Brain & Spine Ctr. v. Aetna Life Ins. Co. to argue that a course of dealing is alone sufficient to plead promissory estoppel is misplaced. N. Jersey Brain & Spine Ctr. supports the opposite conclusion, consistent with the Court's holding, that a course of dealing still needs an unambiguous promise to pay in order to sustain a claim for promissory estoppel. North Jersey Brain & Spine Center, 2019 WL 4889507, at *16. In N. Jersey Brain & Spine Ctr. there is unambiguous evidence of a promise to pay—the defendant there gave prior authorization or advised that such authorization was not required. Id. No such communications have been alleged here.

Because a "clear and definite promise" is the "sine qua non" of a promissory estoppel claim, Malaker Corp. Stockholders Protective Comm. v. First Jersey Nat'l Bank, 163 N.J. Super. 463, 479 (App. Div. 1978) and none is alleged in the First

18

Amended Complaint, Atlantic Neuro's promissory estoppel claim against Cigna and United is dismissed.

    IV.   Count VI-Quantum Meruit against all defendants

    A claim of quantum meruit requires a showing that the defendant was unjustly enriched. See F. Bender, Inc. v. Jos. L. Muscarelle, Inc., 304 N.J. Super. 282, 285 (App. Div. 1997); Fuel Inc. v. BP Prod. N. Am., Inc., No. 08-CV-3947, 2009 WL 1873583, at *8 (D.N.J. June 29, 2009) ("Claims of quantum meruit 'rest[ ] on the equitable principle that a person shall not be allowed to enrich himself unjustly to the expense of another.'") (citation omitted).

    Atlantic Neuro alleges that "defendants received the benefit of Atlantic Neuro's participation in the MultiPlan's Complementary Provider Network and its treatment of the Cigna and United members in question, including but not limited to the collection and division of Shared Savings Fees by and among Cigna and United on the one hand, and MultiPlan on the other, without honoring Atlantic Neuro's Contract Rate." FAC ¶ 148.

    However, Atlantic Neuro's allegation does not show that defendants received a benefit at Atlantic Neuro's expense. Its allegation of unjust enrichment is two-fold. The first is based on the premise that defendants collected and divided a "Shared

Savings Fee"[3] at a higher rate than they would have if they had paid the Contract Rates. FAC ¶¶ 73, 148-49. But the Shared Savings Fee is paid by patients who have self-insured Cigna and United healthcare plans. United and Cigna then pay a portion of Fee to MultiPlan. Accordingly, the benefit of the Fee was paid at the patient's or insurer's expense. It was realized solely because of agreements between Cigna, United, MultiPlan, and its clients. Atlantic Neuro had no direct role in producing for defendants the benefits of a higher Shared Savings Fee. What Atlantic Neuro provided was a benefit to the patients, as in the end defendants were still left with a ripened obligation to pay money. See Broad St. Surgical Ctr., LLC v. UnitedHealth Grp., Inc., No. CIV. 11-2775 JBS/JS, 2012 WL 762498, at *8 (D.N.J. Mar. 6, 2012) ("[T]he insurance company, 'derives no benefit from those services; indeed, what the insurer gets is a ripened obligation to pay money to the insured—which hardly can be called a benefit.'") (quoting Travelers Indem. Co. of Conn. v. Losco Group, Inc., 150 F. Supp. 2d 556, 563 (S.D.N.Y. 2001)).

The second basis on which Atlantic Neuro claims defendants were unjustly enriched is through defendants' leveraging of

---

[3] The Shared Savings Fee is paid by the patient to Cigna or United and is calculated by taking a percentage of the difference between the customary out of network rate for the medical service rendered and the amount Cigna or United ultimately paid to the provider on the claim. FAC ¶ 32. MultiPlan's compensation from Cigna or United is a portion of the Shared Savings Fee. Id. ¶ 34.

their participation in the Complementary Provider Network in their promotional materials in an effort to induce additional customers to participate in their networks. See FAC ¶¶ 70, 73. But again the party conferring the benefit is not Atlantic Neuro. In this scenario, MultiPlan is the entity conferring the benefit of association. That benefit would continue to exist whether or not Atlantic Neuro was a provider in the MultiPlan Network. The promotional materials Atlantic Neuro cites did not guarantee Cigna or United clients access to the MultiPlan Network. It only said that clients "may be eligible to receive discounts" or "may have the right to access contracts and discounts that certain third parties have." FAC ¶¶ 66, 68.

Atlantic Neuro's indirect conferral of benefits is too remote to sustain a claim for quantum meruit and it is accordingly dismissed against all defendants. See Plastic Surgery Ctr., P.A. v. Cigna Health & Life Ins. Co., No. CV 17-2055, 2019 WL 1916205, at *8 (D.N.J. Apr. 30, 2019) ("District courts have consistently dismissed unjust enrichment claims under substantially similar circumstances, reasoning that, if anything, the benefit is derived solely by the insured party.").

V. Leave to Amend

Atlantic Neuro is denied leave to amend. "Although leave to amend should be freely given 'when justice so requires,' it is

21

'within the sound discretion of the district court to grant or deny leave to amend.'" Lopez v. Stop & Shop Supermkt. Co. LLC, 2020 WL 4194897, at *2 (S.D.N.Y. July 21, 2020) (quoting Fed. R. Civ. P. 15(a)(2) and McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 200 (2d Cir. 2007)). Atlantic Neuro's Opposition brief does not suggest the withholding of any curative facts that would show a promise was made or a benefit was conferred by the defendants. It "is well established that leave to amend a complaint need not be granted when amendment would be futile." Kirk v. Heppt, 423 F. Supp. 2d 147, 149 (S.D.N.Y. 2006) (quoting Ellis v. Chao, 336 F.3d 114, 126 (2d Cir. 2003))."

## CONCLUSION

The claims against the parties who made no promise to Atlantic Neuro are dismissed. Cigna's and United's Motions to Dismiss all Counts against them are granted, with prejudice.

What remains of this case are the claims that reflect an actual commitment and that are properly brought against the party which pledged them, MultiPlan. MultiPlan's Motion to Dismiss is granted, with prejudice, as to Counts IV (Breach of Implied Warranty) and VI (Quantum Meruit) but is denied as to Counts I (Breach of Contract) and V (Promissory Estoppel).

So Ordered.

Dated: January ⏐⏐ , 2023
       New York, New York

_Louis L. Stanton_
LOUIS L. STANTON
U.S.D.J.